One and only case. 13-1250 United States of America v. Lewis Kevin Bell. Arguments not to exceed 15 minutes per side. Mr. Allen for the appellant. Thank you your honors and may it please the court. Wynne Allen on behalf of the appellant Lewis Kevin Bell. I'd like to reserve three minutes for rebuttal. The government concedes in this case that Mr. Bell was erroneously sentenced under the Armed Career Criminal Act and thus was incorrectly subjected to a 15-year mandatory minimum sentence. At the very least therefore this case must be remanded for resentencing. Unless the panel has specific questions regarding that sentencing error, I'll focus my argument today on the suppression issue. The legality of the Terry stop in this case turns on the application of a straightforward rule. Although police officers can search a suspicious bulge as an incident to an otherwise lawful stop, they cannot initiate a Terry stop for the sole purpose of searching a bulge in a person's pocket. At least were there not much stronger indicia of criminal activity than were present in this case. So what do we do? I mean the you know the bulge argument makes some sense but we have this law that says when you know it's a little bit like a jury verdict you know that whatever the district court does on the suppression motion, we run the evidentiary inferences in favor of the district court's So in light of the language of Dunning's police report and in light of Dixon's testimony so you know make sure I'm right about this but the report Dunning says writer observed a large bulge in the shape of a handgun. Dixon testimony the bulge appeared to be a gun to me. I think Dunning's testimony is somewhat similar but forget if they exactly said that doesn't don't I am I supposed to say the inferences run in direction of not just they observed a bulge but a bulge and I don't even think it has to be bulge shaped just like a gun but aren't I supposed to assume bulge that look like a gun? A couple of responses to that Judge Sutton. First of all the district court's specific finding on this was that the officers had testified that the bulge was in the shape of a gun so the district court was placing particular emphasis on what he heard the officers testify to. If you go back and listen to look at read the suppression hearing transcript there's no testimony that the bulge was in a gun shape or something resembling that. In fact officer Dunning the one who actually wrote in his report that he thought the bulge was gun shaped in his police report was specifically asked on cross-examination what did the bulge look like and he didn't say it was in the shape of a gun he said it was an object bigger that made the pocket look bigger than it should be or something along those lines so when specifically asked to describe the bulge officer Dunning didn't repeat what he said in the report which was that it was a gun shaped bulge. He gave much more vague testimony about a large bulge that weighed down the jacket. That's the evidentiary inference to which this court should defer. That's his actual testimony when asked before a court to describe the shape of the bulge. You're saying that there is no testimony before the district judge that the bulge was in the shape of a gun? There was no testimony before the district courts that the bulge was in the shape of a gun. The closest either officer testified to that was officer Dixon on cross-examination when asked to describe the bulge said quote the bulge appeared to be a gun to me. The factual basis for that statement however were only twofold. One is he observed a bulge and two is he said it was heavy it weighed down the jacket. He did not specifically. Was there an objection to that testimony? No your honor that was elicited from defense counsel on cross-examination there was no objection. Well that testimony comes in I mean whether it's good opinion or not it's it's a testimony now right? That testimony certainly does come in but I think you should explore the the factual underpinnings of that of that belief of his perception that it was a bulge and the factual that it was a gun that he was looking at and the factual underpinnings of it only were that it was large and it was heavy uh and that's that's those two statements alone aren't aren't sufficient to allow someone to infer I must be looking at a gun or I must be looking at a weapon. What you're saying is we and the district court should not have and we should not indulge in any inference from the statement by the police officer that the bulge was in the shape of a gun? That's correct your honor I said I'm saying looking at the specific uh factual recitation that they gave about why they thought it was a gun it wasn't no one said it was gun shaped or shaped like a gun or N and L. They repeatedly said it was heavy it was large those are the two factual findings that this court should accept as true for purposes of this appeal and ruling on the legality of the Terry stop here. So you but you would give up on this argument if the testimony had been by Dixon say the bulge was in the shape of a gun so it's really the distinction bulge you look straight at the bulge and you say that's the shape of a gun versus it appeared to be a gun. If Dixon had testified very clearly it it looked to be a gun it was in the shape of a gun and the district court had credited that and found that that'd be it would be a different it would be a harder case I think and again I don't think the court is isn't you know needs to find that factual finding here or should but if it did I think I should still win and I'll explain why. Seeing a bulge that's even in the shape of a gun has been held by several courts to not be you know to not give rise to reasonable suspicion that an individual's armed and dangerous because there are too many items that can create that shape in someone's pocket. If you look at the Colorado Supreme Court's decision in Montoya if you look at the or excuse me in the Montoya and the New York Appellate Division's decision in Patino what those courts said is there were officers in those cases they observed a bulge in an individual's pocket they said they testified it looked like a gun to me. The court said it's not enough for a Terry stop in that case because there's too many things that can look like a gun and in fact in those cases when the officer actually investigated the pocket in neither case was it a gun. In one case it was a a lighter and a pocket a pen knife I believe in the other case it was a wad of paper with tinfoil. So even if there was even if you don't find that the district court's finding was clearly erroneous on the shape of the bulge I still don't think the shape of a bulge is enough to give rise to criminal conduct which would the rule that comes out of that case is you can automatically get someone out of the car but in that case once you know if you in the opinion they get them out of the car and then what do they see then isn't it a bulge or something looks like a gun? It is just sudden and in MIMS and cases like that I think fall into their own category because in those cases the officers have an independent lawful basis on which to stop someone. In MIMS in Arizona v. Johnson it's a traffic stop and in those circumstances what the court has said is we want police officers to put themselves in that situation they have to to fulfill their duty and so we lower the standard of when a search is permitted because they have to put themselves in a dangerous position. So you don't think it's the same Terry standard? I do not your honor and the reason is this is in this case the observation of the bulge is what gave rise to the Terry stop in the first instance and in order to conduct a Terry stop you have to have reasonable suspicion that someone's engaged in a crime. Looking at a bulge even a gun-shaped bulge is not sufficient for reasonable suspicion to think someone's engaged in a crime whereas it might be in connection with the traffic stop to believe that someone's armed and dangerous. Wasn't the MIMS traffic stop like an expired license or something? That's correct I believe it was. Those aren't typically gun-wielding people. They're not your honor. So I don't understand why I mean I guess I'm just struggling a little bit with why you know maybe in some settings it wouldn't be the Terry stop Terry frisking query but I guess I'm not sure I understand why this isn't exactly the same as the Terry frisking query. I mean all that person's done is the license expired and you're allowed to get them out of the car for your own safety but that doesn't let you allow you necessarily frisk them. Again I think it goes to the to the reason the officer is in that position in MIMS versus the reason the officers were in this position here. In MIMS when officers have to stop someone for a traffic citation or they have to investigate drug trafficking activities they're compelled to put themselves in what's an inherently dangerous situation and in that circumstance we lower the bar a little bit to allow them to conduct searches because we're concerned about officer safety. That's not what happened here. Here the officers observed an individual walking down the street lawfully. They had no independent basis to suspect him of criminal activity and they approached him to engage in a consensual encounter and observed a Terry frisker permitted as an incident to a consensual encounter just because an officer thinks well a bulge might have a weapon I'm particularly concerned about it. The difference is between circumstances in which an officer has an independent basis to suspect criminal activity in which we want them to investigate and circumstances in which they just observed someone walking down the street with a bulge in their pocket and they're not sure what's in that bulge. Always raise reasonable suspicion or if a person has a gun pistol on in his pocket. So far as I know under federal law it's not always a crime for a person to carry a pistol in his pocket. Under state law Michigan law perhaps it is but wouldn't that depend on having a permit to carry the pistol and an assumption that that the person is violating the law and doesn't have a permit. I don't get you seem to be agreeing that if the police officer testified accurately that the bulge in the pocket looked like an outline of a gun that that would provide reasonable suspicion and you may very well be right. I'm just wondering whether that is true that does always provide reasonable suspicion. Judge, there's a couple of things in there I'd like to respond to. First of all I absolutely am not saying that if they testified that if they saw an outline of a gun that would give rise to I'm not saying that so I just want to clarify that. Second I want to ask you a question about what Michigan state law says about carrying a pistol. It's only a crime to carry a concealed weapon in Michigan if you don't have a license. So the statute specifically says this is MCL 750.227 a person shall not carry a pistol concealed on or about his or her person without a license to carry the pistol. So the point you make about it's not necessarily criminal for someone to be because you can do so lawfully with a license. But it gives rise to reasonable suspicion. I don't think seeing the outline of a gun or a gun shaped bulge in someone's jacket gives rise to reasonable suspicion because there's too many innocent items that could make that outline in someone's jacket. Let's assume that we say that the inference is sufficient and that the that he had a gun. Let's just say for hypothetical purposes you're saying if that is the case it would be a basis for reasonable suspicion in a state where you can carry a pistol or a gun if you have a license. I think that's a difficult question and the reason I say that is because the courts of appeals are actually divided on that question. Really? The observing someone open carrying a weapon doesn't give rise to reasonable suspicion at least in North Carolina because it's legal to open carry with a license. Judge Becker has a decision from the Third Circuit where he said that a concealed carry in the Virgin Islands didn't give rise to reasonable suspicion because it's legal to conceal carry in Virgin Islands. Other courts have reached other conclusions. The Tenth Circuit and the Eleventh and the Second I believe have said even if it's legal to carry with a license it's at least reasonable suspicion to believe that it's violating the law. So I think that question... The Sixth Circuit hasn't said anything. To my knowledge the Sixth Circuit has not said anything. I don't think you have to reach that question here for a number of reasons that I've laid out in the briefs in here today but I do think it's a very difficult question. So you mentioned the sentencing, you mentioned suppression. Do you want to talk for a minute about the loss of the code or do you want to save it for rebuttal? I'm just going to rest on my papers on that but unless someone has a question. What about the clutching of this object in a quote? Doesn't that put you put them over the top even if you say the bulge itself whether it's not whether it's in the shape of a gun or not once he clutches that bulge doesn't that create reasonable suspicion? I don't think so Judge Griffin for a couple reasons. One is if you don't know what's in the pocket whether it's lawful unlawful or not the clutching of it could be a perfectly natural response to what happened. It could be but could could not be as well. That's true but under these facts it's particularly an innocent or it's particularly doesn't give much rise to reasonable suspicion or doesn't add much to the reasonable suspicion calculus I should say given that he was approached after 10 o'clock at night on the street by two individuals from behind shining high-powered flashlights at him who he wasn't sure who it was. So it might be a perfectly natural reaction to reach for something. What would be the innocent explanation of clutching this object? It could be a wallet or a cell phone. If you're in a high crime area at night and you're approached on unawares by individuals you might be think you're being robbed. You might might be subconscious. There might be all kind of reasons to do it and the last point I'd make on that is there are at least three decisions that I know of that have said seeing a bulge and clutching it are not enough to give rise for reasonable suspicion. Are our cases? They're not Sixth Circuit cases. Nothing we have to follow. That's correct. They're just persuasive not binding precedent. All right thank you Mr. Allen. You get your full rebuttal. Mr. Chasteen. Good afternoon. Mark Chasteen for the United States. I'd like to I think pick up near the end of where Mr. Allen left off and the court left off on this question of Michigan state law. The court actually has spoken or visited this issue before in two cases. This court? This court. Both of those cases involved traffic stops and finding a gun in a car, but under the same law it's illegal to carry a pistol in a vehicle in Michigan. Those cases are... It's legal to carry a pistol in Michigan on your person if you have a license. That's correct. He says we haven't decided whether that, what to do about that, whether that in and of itself creates reasonable suspicion for a Terry stop or not. Well in United States versus Galaviz, which is G-A-L-A-V-I-Z, from this court in 2011 and then again in 2012 in the first in the United States versus William, the court addressed this question of whether it's legal if you have a permit would obviate reasonable and articulable suspicion and the court said because it's on the burden of the person carrying the weapon to produce the permit if they're stopped under Michigan state law that seeing somebody carrying... Where does this come from? The burden is on the person legally carrying the weapon with a license to do what? Under Michigan law if I were walking down the street and carrying a handgun and the police stopped me, it would be my burden to produce the permit or the license that allowed me to carry a weapon. That's Michigan state law. Pardon me? I mean if the police ask you do you have a license or when they don't ask anything? Well essentially what I'm saying is it's an affirmative defense to a carrying a concealed weapon charge. That it's the burden on the person to show that they have a permit to avoid that charge and because that's the case this court has decided in the two cases that I mentioned before that it is in fact reasonable suspicion that someone is violating that Michigan law if the police observe a gun where it shouldn't be. In those two cases it was in a car but I submit to the same analysis. The law is it's not supposed to be in a car. Correct. You can't carry a pistol and... Being on the person is okay. It's the same law you can't carry it in a car and you can't carry it on you know on your person without a permit in Michigan. So what do you say about the bulge argument? The bulge argument going back to I think the beginning of Mr. Allen's argument. I think that it's not merely an inference that the the officers observed a gun-shaped bulge in this case. The defense submitted to Judge Steed two times. Judge or Officer Dunning's report as well as... But he didn't testify consistently. I mean you're right the report's really good. It says large... The report is in evidence? It is in evidence under the federal rules of evidence and this court's I'm sorry yes this court's case in the United States versus Step those kinds of reports can come in as evidence because of course the rules of evidence I mean the issue we don't have an evidentiary issue here on appeal so the report itself is in evidence and so what it says is in the record and the argument today was the testimony did not totally support it but it didn't totally contradict it either I guess did it? It did not. So we can rely on the report. No officer testified no witness testified that it did not appear to be a gun in fact the only testimony is consistent with the officer's report where on cross-examination Officer Dixon when asked by Defense Counsel what it looked like said it appeared to him to be a gun. Coupled with the officer's reports in which they described it as gun-shaped the evidence was clearly sufficient for the district court to determine that it was a gun-shaped bulge. What kind of coat was he wearing that would you demonstrate in outline form that there was a gun in a proper right hand pocket is that what it was? I believe it was his right side lower I'm not sure it was lower it said right pocket right coat pocket. Was it a thick coat or was it a do you know what kind it was? The only testimony that we had about it came from Officer Dunning where he testified that this is at record 60 page ID 468 Officer Dunning said that the coat was not a big deep winter style coat but more of a jacket and it was black in color those are really the only descriptions that we have. So there's just one thing I mean I you know the reports there I'm not sure the cross-examination testimony of Dunning I'm not sure how much it changes things but I guess I would have thought the whole point of cross-examination is you you filed this report and now we get to ask why and what did you mean and isn't the what what did you mean the best evidence on this score and there he's not saying shape anymore he's being asked to explain what do you mean by this he could have said well it was in an L shape like a gun that's not what he said so I'm not sure it makes a difference but I guess I would have thought even running all the we have to do we have to figure out what to run them off of and if one person is saying different things wouldn't cross-examination be the place to look? I don't think that he's saying anything different he's saying clearly would have been preferable if he had said that it was a gun-shaped bulge it would have clarified that but he doesn't say anything that's inconsistent with his report he was asked sort of a general question what did it what did it look like or could you describe the bulge and he said it was a big bulge as though something was protruding from the pocket which would be consistent with a firearm which he later in his testimony described was a fairly big handgun I think he said it was a 380 automatic or semi-automatic handgun. The police report get into evidence what exactly happened to introduce it into evidence? Mr. Bell's attorney attached it to his opening brief on his motion to suppress and again on his reply brief he attached both officer Dixon's activity log that described a gun-shaped bulge. Defendant's lawyer had it introduced in evidence? That's correct I mean it was submitted to the district court it wasn't formally introduced as an as an exhibit in the suppression hearing but it was put before the district court in terms of the submit. I thought it was admitted during the evidentiary hearing without objection and that that way it would be part of the evidence the fact that you attach something to your brief doesn't mean that it's in evidence anymore I mean it's it doesn't mean it's means you've attached to the brief whatever purpose that is but okay so we are I think if you look at the evidence at the suppression hearing you are limited to the testimony of the officer because that's the only thing under oath I mean they could stipulate and that's what I thought that they did here that well we stipulate to admit into evidence the report they do that fine it's not hearsay anymore it's it's admitted into evidence by stipulation but attaching it to a brief I don't think it's the same thing. I don't believe it was stipulated I'd be happy to go back and check the record on that but in any event I'd submit that by the defense submitting this evidence to the court for its review the defense can cannot now stand on some sort of objection saying that's not evidence when they when they are the ones who gave the report clearly wanting the district court to rely on that in deciding the motion. I doubt they admit everything in that report I don't think that was the purpose that we hereby stipulate to all the facts contained in the report I don't know why they would attach it but I don't have the motion in front of me but I think clearly they wanted the district court to rely on that otherwise they would not have submitted that to the district court two times. What purpose would it help them for the district court to rely on it? I mean I don't understand why the lawyer would have done that maybe he didn't know what he was doing or something. Well I don't know what the lawyer's theory on that but we've on appeal that a very different theory has come forward about when exactly the sequence of events happened and what the officers saw and when a show of authority was made so perhaps the defense attorney thought that that was the way that he was going to go with this rather than contesting whether the bulge itself was in the shape of a gun. That is going to happen in the court below when you get back down there. Exactly. It's going to be a change in the sentence in the case? I would like to address that although the government has agreed that this needs to be remanded because Mr. Bell is not eligible for sentencing under the Armed Career Criminal Act. It's our position that this should be a very specific remand to the district court to resentence under the the appropriate guidelines provisions that are not under the Armed Career Criminal Act that this shouldn't be the case in which all of the sentencing is reopened rather for the district court to just recalculate the guidelines and then make a decision. Did you tell the district court what to send? Did he must sentence the guideline sentence? Is that what you said? No just that he may he should recalculate the guidelines and then make any adjustments to the sentence based on that new guidelines number rather than reopening all of the 35. What difference what are you worried about? What difference could it make? I don't know versus specific here. I know I know the distinction you're drawing but I I'm puzzled why you're worried about anything. I just don't think. What's his range going to be under the new? I think it would be probably at the top of the guidelines range. I 10 years but I haven't actually gone back and recalculated the guideline but given that he has three prior. Based on the district judge's authority and you know we've got these guidelines are advisory now and he can do about this what he wants to. Because the defense has only raised one sentencing error and that is that he was sentenced over the otherwise applicable statutory maximum and according to a guideline that did not apply. So therefore correcting that error this should come back to the district court to re-sentence based on that error being corrected. He's of course the district court is going to apply the 3553a factors in light of the new guidelines. I guess my point is this shouldn't be an opportunity for the defendant to come in now and argue all those other factors that he's already had an opportunity to argue and does not contest on appeal were inappropriately decided. So what are you afraid of? I don't know what he's going to say on sentencing if he wants to come in with a whole new raft of evidence of saying that he's got some other 3553a factors. This is if he had those if he thinks that the district court should have considered them he should have raised them in the first instance this shouldn't be a second bite at the apple just because the district court erred in this regard in a way that the defendant didn't challenge below. I'd like to get back to the defense theory in this case which really rests on the remarkable premise that the police made a show of authority when they pulled up behind Mr. Bell at night and shined their flashlight on him and that he was seized when he turned around to look at the light and figure out what the light well who was shining a light on him. I think he doesn't say that he says that the seizure took place when they told him to raise his hands hold up your hands. No that's that's the government's position his position is very clearly at least in his reply brief he kind of comes forward with it at last that the the police made a show of authority to seize Mr. Bell when as he was walking away from them they pulled behind him and shined their flashlight on that's very clearly in the defense brief. The whole difference between the theories or the approaches of when or when he was seized is the clutching of the object right that the the clutching occurred after they came behind him and and shown the the flashlight on him right. Actually the reason that I think the defense has said that he was seized as soon as he turned around is because pretty much all of the evidence comes after he turns around including the clutching but also the view of the gun-shaped bulge. That's not what Mr. Allen said just now he didn't I was listening to his argument that wasn't the way he put it. Well it's kind of frustrating that we have a little bit of a moving target here but in the in the briefs at least he's very clear that that he says Mr. Bell that the officers made a show of authority when they shined their flashlights on him and that he was seized when he turns around to see what that light was. Is this a brief for you? Yes. For example he writes in his opening brief at page 19 of his opening brief that Mr. Bell was seized at the moment he stopped walking down the sidewalk and turned to face the officers in response to their over display of authority. Over display of authority? Right. Well I don't know what that means. You over display maybe because they ask him to hold up his hands. You would agree I take it you say you would agree that he was seized when they said hold up your hands. No I agree he was seized when he put up his hands. I it was a show of authority there's sort of two critical points in any reasonable any kind of terror stop analysis and one is when did the officers make a when there's a non-physical seizure? When did the officers make a show of authority? In this case it's the told him to put up his hands and then when did the person submit to that show of authority? In this case it was after it's when he put up his hands in response to those commands. Up till then all the police had done was shine a flashlight on him from behind without saying anything, observed him turn around and walk toward them with a gun-shaped bulge in his pocket and as they got out of their car saw him clutching this bulge. Okay that's what I thought you said it all happened together. No it didn't happen together he clutched after they got out of the vehicle. If I said that I misspoke what I meant is it all happened after the point at which Mr. Allen wants to say he was already seized. He was clutching his bulge the officers got out of the car saw him. There might be an issue getting out of the car was that a seizure? I mean there's issue of flashing the stopping your car flashing the flashlight and then the without saying anything. I think it would be a remarkable extension or I should say retraction of police authority to say that by getting out of a police car behind somebody the officers have made a show of authority to seize them especially when that person has voluntarily turned around and started walking toward them. They did not activate their patrol car lights. There is no evidence that they did that. That would be a show of authority would it not? That would be a factor to consider and whether they had made a show of authority. If they drew their guns that would be authority. Certainly. If they ordered him to stop if they commanded him to do something that would be a show of authority. And such as the Johnson case that Mr. Allen heavily relies upon in that case the officers repeatedly ordered him to stop said they were the police. The theory is they stop they flash this flashlight they may just want to go up and say how you doing tonight. Ask him some questions that he might voluntarily answer or not. Well even in the defense reply brief at least on two occasions he acknowledges that Mr. Bell himself might not even realize that these were the police when he turned around to figure out why somebody was shining his light. Police can approach people on the street to ask them questions whether or not they have reasonable suspicion. Correct that would be the Drayton case from the Supreme Court and the street case from this. I say that I'm out of time. Just make sure I'm getting the point of this. The point of this distinction is until he turns around you can't see bulges. That's correct. That's why this this fight is important and uh if you if you call it a stop before then it's pretty hard to have a whole lot of reasonable suspicion um yeah okay I got it. But they the defense argues that even at that point and then after they clutch it they have no reasonable suspicion to detain him. He's throwing up a lot of arguments. He's gonna he's gonna get one of them. He's trying. I don't know if we're gonna get one but he's trying. All right thank you Mr. Chasteen. Mr. Allen uh so you know so that that was helpful. So there are two different points here right? You're trying to say no reasonable suspicion um before he turns around and that there was a cognizable fourth amendment stop before then and then even after that um you don't get reasonable suspicion from the bulge or clutching. I think there's a little bit of misunderstanding I just want to clear up. So Mr. Bell's position on when he receives his layout very clearly on page seven of his reply brief in the paragraph in the on the bottom that says I'll give you a second to turn to it. It begins with yes sir the reply brief and it begins it's a paragraph that begins that is wrong and this that the sentence after that is the proper point of seizure in this case was not when Mr. Bell physically raised his hands but was instead when the officers exited their car confronted Mr. Bell and ordered him to raise his hands. So the the point of seizure in this case was when the officers ordered him to raise his hands. And Judge Griffin to answer your question at that point this is what they knew. They knew Mr. Bell was present in a high crime area. They knew he was walking down the sidewalk. They knew he had a bulge in his pocket and they knew he had clutched the bulge when they exited their vehicle. That is the state of facts for as for ascertaining reasonable certainty. You're not challenging consensual encounter stuff before then? I am not, no. And it's my submission that that state of facts if you actually go back and look at some of this court's other Terry stop cases that's a remarkably thin basis on which to justify Terry stop. Okay the Terry how much evidence you need for a Terry stop is relatively thin. I mean the facts in Terry versus Ohio is that these guys at late at night were looking at windows display windows downtown were they were they not and it was not not a very serious indication that criminal activity was afoot. And I mean the Supreme Court doesn't require a heck of a lot for Terry stops do they? I believe Terry is actually a pretty good counter analogy here because the officers in Terry observed the individuals for 10 to 12 minutes casing a storefront walking back and forth in front of it over a dozen times. Looking at the windows right? Over a dozen times repeating the same conduct over for 10 to 12 minutes to me or I'd submit that that's much more indicative of criminal behavior at least reasonable suspicion of criminal behavior than pulling up someone seeing a bulge seeing him grab it which all happens probably within the span of 30 seconds. You're leaving this sentence that you're pointing to the proper point of seizure leaves out anything having to do with the shape of the bulge. No your honor the shape the officers observed the shape of the bulge before this point so this would include in the reasonable suspicion analysis because by this point he had turned around to face the cruiser so they could see the bulge. So by this point they knew there was a bulge they knew it was heavy. I just contest I don't think the record adequately establishes that the bulge was gun-shaped. Well that's the evidentiary problem. Correct. It doesn't establish that the bulge was in the shape of a gun because that's not in evidence just your. Well you weren't the lawyer below but do you know what we do with this report? I don't I mean there's a couple options I think one is I think that the proper weight is to be given to the officer's testimony not to what's in this report that as we've explored may or may not attaching the the report to the to the motion. I do not know what the lawyer's thinking was my surmising. Did the motion reference this attachment? It did. What did it say? It did to describe the the facts and circumstances of the I believe that I believe the suppression motion was filed before the hearing and so in order to establish the facts of the encounter okay the lawyer needed. Assuming these are the true facts. I believe that's what happened yes Judge Griffin. So then you say well then we have an evidentiary hearing later on that supersedes this assuming but not deciding these are the facts. Correct. I can understand that. I think the earlier lawyer was clever by attaching the report he conveyed the impression that it was helpful to his clients the government thought we're not putting the report in and bingo the report's never in. Very clever. All different styles of law lawyering Judge Sutton. I see I'm out of time but for these reasons this court should hold that the Terry stop in this case was unlawful hold that the exclusionary rule applies and reverse Mr. Bell's conviction. When it goes back down to the court below are you going to be a lawyer in that case? I'd like to continue to represent Mr. Bell as long as he'll have me. What is going you think going to happen in the court below on the question of sentencing I suppose? Your Honor my I haven't given it too much thought but I would expect that he would go down for a full re-sentencing it would be a full hearing I'd have the opportunity to present the evidence on Mr. Bell's behalf that I think should be permitted on any of the proper sentencing factors. Thank you very much. Well thanks to both of you both give great arguments break great briefs Mr. Allen I see your court appointed counsel my colleagues have already remarked on what a great job you did in your brief and you echoed that with the oral argument so thanks so much you know Mr. Bell's really lucky we're really lucky keep doing this stay with Mr. Bell as long as you can and you're offering your services from time to time to the Sixth Circuit and what how does this work that you get a point he wants to see more of you. I had the honor of clerking on this court. Yes I know you did. I donate some of my time to representing individuals. Can you just tell the clerk's office that if you've got an interesting case let me know. I do Kim Loomis helps me out a lot of the day that's kind of how it works our firm has been a number of our firm's associates who've argued cases. Who did you clerk for? I clerked for Judge Sutton. Okay now the truth comes out. All right well thanks to both of you great job the case will be submitted the clerk can adjourn court. This honorable court is now adjourned.